The Cleveland Trust Co., Trustee, *v.* Hickox et al.

(Decided May 27, 1929.)

*Messrs. Sawyer, Cummings, Andrews & Belden,* for plaintiff.

*Messrs. Henderson, Quail, McGraw & Morgan,* for defendant, Alice C. Hickox.

*Messrs. Thompson, Hine & Flory,* for defendant, Nichols.

SULLIVAN, J. This cause is here on appeal from the court of common pleas of Cuyahoga county, wherein a decree was entered in favor of George W. Nichols, guardian of Charles Hickox, Martha Ann Hickox, and Patricia Calhoun Hickox, minors, and the issue, involving the sum of $36,000 in cash, is whether that sum of money is income or corpus, and the Cleveland Trust Company, as trustee under the will of Charles G. Hickox, deceased, under Section 10857, General Code, prays for a construction as to the character of this fund, and Alice C. Hickox, beneficiary under the will of her husband, Charles G. Hickox, deceased, contends that the $36,000 received and held by the trustee is income, while the guardian for the minors above named contends that it is principal, and therefore belongs to the corpus of the estate.

In determining the construction of clauses in a will, the purpose of the analysis is to reach the intent of the maker. The same can be said with respect to a contract, where it becomes necessary to interpret one of its provisions. What is the intent of the parties as gathered from the language, giving to the provision the meaning derived from the use of the language employed? The same principle of construction applies to a legislative act—to discover its application the purpose of the Legislature is an element which cannot be ignored. Obviously the same reasoning applies in determining the issue at bar.

What did the corporation do under the authority of the statute? What is the language of the corporate act, giving to the words their ordinary meaning? Is the language impregnated with uncertainty

or ambiguity, or does the language itself carry its own interpretation? What was the intent of the board of directors and the stockholders? Was it to declare a dividend? If such was not the purpose of the corporation, is the ultimate result, from the nature of the case, equivalent to the declaration of a dividend? In other words, did the corporation actually do in law what it intended by its corporate expression not to do? If it did, then it is because the naked facts surrounding the transaction compel the conclusion of law that the inevitable finality of the action of the corporation was the declaration of a dividend. It is a well-established proposition of law that no shift or device on the part of a corporation or other entity can escape the application of a law, where, notwithstanding the language, the consequence of the intrinsic acts is the applicability of the law the avoidance of which has been sought by the exercise of the device. These interrogatories and observations naturally and logically arise wherever it becomes of vital importance to reach the purpose and the intent of parties to the transaction. In the case at bar the Cleveland Stone Company, as appears from the record, when under the law it could and did declare a dividend for its stockholders, used language that established beyond peradventure the declaration of a dividend, and it is presumed that, when the resolutions of the corporation hereinafter quoted were passed and adopted by both the directors and the stockholders, had a dividend been intended, language would have been used such as used in previous actions of the corporation where dividends were declared. It is not logical to conclude that there would have been a departure, or

that language such as we read in the resolutions would have been employed if the corporation or its stockholders had in mind the declaring of a dividend. There is nothing in the record that furnishes a motive for departing from the ordinary rule of the corporation in the declaration of a dividend, and certainly there is nothing in the language that does not irrevocably lead to the conclusion that a dividend was not intended, and there is nothing in the language from which the conclusion could be drawn that a dividend was actually declared. On the other hand, however, it is conclusive, as will appear from the language, that not only the purpose and intention of the corporation was not to declare a dividend, but to create a basis, founded upon actual consideration, for the cancellation and the surrendering of the old stock in the Cleveland Stone Company, issued at par value, in exchange for new stock of no par value, plus $100 in money, upon the reorganization of the company, and effective only upon the old stock passing out of legal existence, and this observation has an important bearing upon the question whether the $36,000 was income or corpus, because the fact stands out strikingly that, when all of the stock of the Cleveland Stone Company was surrendered under the specific terms of the resolution, in a strong sense the old organization, with par value stock, as a legal entity founded upon that character of stock, passed out of existence, and under the authorities there was a partial or a total liquidation. The distribution of that for which the old stock was exchanged is not distribution of income, but corpus, and it must be noted as bearing upon the question of liquidation that, preceding the reorganization of the

company under the terms of the resolution, the stock itself had a market value of $166 per share, and that, therefore, the value of the trust, as represented by 360 shares, was $59,760. Subsequent to the reorganization, and adherence to the provisions of the resolution as to the exchange of stock, the value of the new stock upon reduction of the capital had a market value of only $55 per share, thus making the value of the corpus $19,800, and this sum is less than one-third its value preceding distribution and about one-half of its value when the trust began to operate.

Recurring to our discussion as to whether the corporation declared a dividend intentionally or unintentionally, we think it is profitable to examine the resolution of the directors, dated June 11, 1926. It is as follows:

"Resolution of Directors, June 11, 1926:

"Resolved: That contingent on the reorganization of this Company under Sections 8728-1 to 8728-12 of the General Code of Ohio, so as to permit the issuance of shares of stock without par value, the Board of Directors of this Company hereby authorize an exchange with all present stockholders of one share of no par stock, and $100.00 in money at the time the said reorganization becomes effective upon the surrender to the Guardian Trust Company of each of the outstanding shares of stock now held by each stockholder."

The superstructure of this resolution, instead of a dividend, is an exchange of property. A dividend is payable as of a day certain. The transaction which finds birth in the resolution of the directors is of no avail unless it is effectuated by the surrender to the Guardian Trust Company of each and every

share of the outstanding shares of stock then and there held by each stockholder.

It is claimed that later on the scheme of exchange was abandoned, because by the act of the president of the corporation a notice was sent out to the stockholders, calling a meeting for June 29, 1926, for the purpose of reorganizing the company, and it is claimed that in the same envelope there was a letter signed by the president abandoning the position that the certificate of reorganization was to provide for the cash payment. It is claimed that the form of proxy sent out at this time ignored the provision as to a cash payment, and it is urged by learned counsel, in behalf of Alice C. Hickox, that the Cleveland Trust Company, as trustee under the Hickox will, executed a proxy of this character.

It does not appear in the record anywhere, so far as we are able to observe, that even if there were any legal significance to the form of proxy, or this letter of the president, such officer had any authority in any manner to deviate from the transaction with the stockholders and the corporation evinced by the language of the resolution of June 11, 1926. As against the action of the board of directors so authorizing him, the president's action is of no legal avail, for it cannot be said that a letter of the president, or even the form of a proxy, could in any manner devitalize the purpose and plan of the corporation, acting through its board of directors, for an exchange of old stock for new stock, with the condition precedent for the cancellation and surrender of each and every share of the old stock. The basic understanding among the stockholders and the directors is those resolutions of June 11, 1926, and June 29, 1926. It

is our judgment that the action of the president and the form of the proxy, as above noted, in no manner produce a recession from the plan outlined in those resolutions, and can in no way remove the impregnable fact that the foundation of the corporate bargain was the exchange as outlined in the resolution of the directors and the resolution of the stockholders of June 29, 1926, which is as follows:

"Resolution of Stockholders, June 29, 1926.

"Resolved: That when said certificate of reorganization shall have been so executed and filed, all of the outstanding capital stock of the Company shall be exchanged for new capital stock without par value and One Hundred Dollars ($100.00) in money for each share of the present outstanding capital stock with par value; and the proper officers are hereby authorized and directed to make all arrangements deemed necessary or proper in order to effect such exchange."

If there were any further fact necessary to show that there was no deviation made by the letter of the president or the form of the proxy, it is only necessary to observe that the distribution in the case at bar was made under and according to the provisions of these resolutions by the Guardian Trust Company, as fiscal agent for the Cleveland Stone Company, after the old certificates had been canceled and surrendered, and thus instead of an agreement, or a transaction executory in its nature, we find a plan and contract fully executed. This being so, even if the form of the proxy or the letter of the president were a departure from the contract, the question of *ultra vires* could not be raised. It is clear from the record, however, that the action of the stockholders

on June 29, 1926, was of such nature as would estop any claim for *ultra vires* as against the action of the board of directors on June 11, 1926, in the face of the letter and proxy in question, and, as before noted, inasmuch as we are dealing with an executed contract, the question of *ultra vires* could not be raised. *Hamilton & Rossville Hydraulic Co.* v. *C., H. & D. Rd. Co.,* 29 Ohio St., 341; *London & Lancashire Indemnity Co.* v. *Fairbanks Steam Shovel Co.,* 112 Ohio St., 136, 147 N. E., 329; *Gas & Fuel Co.* v. *Dairy Co.,* 60 Ohio St., 96, 106, 107, 53 N. E., 711.

Thus upon the question of the intent and purpose of the corporation manifested not only by the act of its directors, but by that of its stockholders, and by the very nature of the transaction, it is our unanimous conclusion that there was no intention to declare a dividend, but, on the contrary, was a settled and determined purpose to reorganize the company by an exchange of stock which would only become effective upon the cancellation and surrender of the old par value stock upon receipt of new stock of no par value and $100 in money, both of which were mutually agreed upon between all the stockholders and all the directors as the consideration for the surrender of the old stock and the ending of the legal entity that had been organized and operating upon a par value basis, and we find no authority, in a case like the one at bar, that converts the transaction from an exchange of property, as we look at it in its entirety, into corporate action equivalent to the declaration of a dividend, and the mooring to which we are anchored, in our views, is the basic fact that there was a fair and equitable exchange of properties, and the inducement and condition precedent by

which the Cleveland Stone Company was to effect a reorganization was that the stockholders should surrender their certificates of stock and as a consideration therefor receive equal shares in the new, and a cash payment, as the actual value of the stock which was being canceled and surrendered.

As the learned judge who tried the case at bar in the common pleas court expressed himself, so do we, in saying that, while there are principles of law which are applicable in the determination of this case, as well as authorities that ought to be considered in determining the issues, yet the issue is largely one of fact, and that to eliminate the evidence in the record as to the intention of the parties would be to decide the case without calling into requisition the vital point in the solution of the contention; that is to say, the intention of all the stockholders and the directors as expressed in their resolutions which resulted in the carrying out of all provisions by the full and final execution of a complete contract. However, there is another element bearing upon the question of intention, and that is the testator's intention. A reasonable inference and conclusion issuing from an examination of the will itself is that the intent of the testator finds its fulfillment in translating the fund in question to the corpus, and nowhere can it be gathered that the purpose of the testator was that this $36,000 was to be considered as a dividend, payable and to be distributed immediately.

It will be observed that at the date of the testator's death the Cleveland Stone Company had acquired the Indiana Quarries Company. Bonds had been issued in payment therefor, and it is our judgment, based upon the record, that the testator re-

garded the Indiana Quarries Company as part of the capital assets of the Cleveland Stone Company.

Another fact supporting the above conclusions is that, in reporting to the United States government under the income tax law, with respect to distributions to stockholders in excess of $500, upon reorganization, the words on the reporting sheet, ''List of Dividend Payments,'' were erased, and over them a slip was pasted bearing the words, ''Lists covering special distribution to stockholders on reorganization,'' and the effect of this substitution is that the act of the corporation and its stockholders was not the declaration of a dividend, but a conformity to the written resolution providing for an exchange of old for new stock, effectuated and signalized by a surrender of one stock for another stock vitally and substantially different in commercial, corporate, and, therefore, legal character, and it is to be noted in this connection that in the case at bar the $36,000 in controversy was distributed to the Cleveland Trust Company, together with 360 shares of no par stock, for surrender by way of exchange for 360 shares of par stock, in accordance with the resolutions authorizing exchange; thence a completed agreement, an executed contract, which upon full performance left as the net result the disappearance of the old company.

Those cases based upon the Massachusetts rule, adopted in Ohio, that dividends go to the life tenant, cited by learned counsel, are only applicable where the determination of the issue is that a dividend is declared or legally exists, even though it may not be so denominated, and that rule would apply in the case at bar if the $36,000 was a dividend. Then, ob-

viously, the money is not corpus, but income or dividend. The 360 shares of old stock, without peradventure, were corpus. The $36,000 at issue came to the trustee because it was part of the purchase price for the surrender, cancellation, and delivery of the old stock, unquestionably corpus, and in the scheme of reorganization the no par stock and this money assumed the character of the old stock, to wit, corpus, and the reduction in the value of the capital stock, as above noted, it depreciating in proportion to the original value of the holding, is proof to a mathematical certainty that the exchange was value for value, and thus the cash payments did not partake of the ingredients of either income or earnings; nor were they of such nature that in the light of the full transaction they could be considered in any wise the legal basis for dividends or earnings.

We have discussed at length the question of intent as derivable from the resolutions and the attendant facts, but it is to be observed that this question of intent is not one of circumstance, deduction, or inference. In other words, it is not a case of seeking refuge in language to escape an act which in and of itself renders ineffectual the matter of intent; but we summon it to our aid in reaching a conclusion, because it has the vital force of legal authority.

In *Gifford* v. *Thompson,* 115 Mass., 478, we find basis for this doctrine and the application of this principle as an aid in deciding the question at bar. As in the case just noted, the cash was retained until the stock was surrendered, and thus in both cases there was an expression of intent, and an act which clothes the transaction with the garments fitted to it by the vote of the corporation through its officers,

directors, and stockholders. In the case just noted it is clearly stated that the intent as well as the substance of the resolution form the key to a solution of the problem.

The only way, under the record in this case, to declare the $36,000 income or dividend is completely to ignore, not only the clearly expressed intent of the corporation and the testator, but the fact that the substance of the acts themselves, as indicated by the resolutions and the executed agreements, is far afield from the claim that the money in question is income; and, in order so to decide, it would be necessary for the court to do without authority what the directors did not either do or intend to do. The court cannot declare a dividend, or create income or earnings out of the act of the stockholders and directors in consummating the agreement authorized by the resolution, and, if the court exercised such power in the face of the fact that the deal was fully and finally consummated, it would so irrevocably confuse the situation that chaos only would result, because the old stock has been canceled by the issue of the no par stock and the cash payment, and the corporation, newly reorganized, is operating upon a basis substantially different in legal character.

If there is an exchange of corporate stock by the trustees, which in and of itself is part of the corpus, it is absolutely immaterial as to whether the other party with respect to the exchange is the corporation issuing the stock or some other party. If there is liquidation of a corporation, partial or complete, the determining element of the transaction is whether the stockholders surrender and cancel the stock which is given in exchange, and the same is

true as to a partial exchange of corporate assets for new securities in case of partial liquidation, as was the situation in *Gifford* v. *Thompson,* 115 Mass., 478.

That the assets so used belong to the corpus there can be no question, even though they were a part of earnings already accumulated.

We read in *Wilberding, Admr.,* v. *Miller,* 90 Ohio St., 28, 106 N. E., 665, L. R. A., 1916A, 722, syllabus 2, as follows:

"The distributive share of the assets of a corporation received by trustees on the liquidation and dissolution of the company belongs to the trust fund, although the assets so distributed included a surplus which the company had accumulated from its earnings and had invested, used and held in the promotion of its business, acting in good faith and for the best interest of all concerned."

We quote from the opinion, at page 59, of 90 Ohio State (106 N. E., 674):

"So far as the fund distributed on the dissolution of the company is concerned, there was no distribution of income, dividend or profit. It was simply dividing up the entire assets of the corporation after the payment of its debts among those who owned the assets of the corporation, to wit, the stockholders."

We think we find basis for our reasoning in this case in the case of *In re Tedlie,* 91 Law J. Ch. (N. S.), 346, and we quote therefrom as follows:

"As regards the 147 pounds I am of the opinion that it ought to be treated as capital. It represents a payment made to the preference shareholder in consideration of his giving up his preferential rights as a shareholder, and involves, to that extent, a sale

by the shareholder of his interest as a preference shareholder in consideration of the payment of the 20s. per share. The transaction by which the preference shares held by the trustees have been converted into ordinary shares is in substance a sale of part of the capital, and the purchase moneys received for this partial sale must be treated in the same way as other capital moneys coming to their hands and representing proceeds of sale would be treated. It has been suggested that the 147 pounds ought in some way to be apportioned between capital and income in that the tenant for life loses the ten per cent. cumulative dividend payable under the company's constitution upon the preference shares and in the position of an ordinary shareholder runs the risk of not getting as large a dividend, or possibly any dividend at all; but I think that this suggestion is not well founded, and that any necessary apportionment is brought about by the fact that the 147 pounds when received by the trustees will be invested and the tenant for life will be entitled to the income from such investment. The 147 pounds must be regarded as the true difference in value between 147 shares as ten per cent. cumulative preference shares and as ordinary shares, and as the tenant for life will receive the dividends on the ordinary shares and the income from the 147 pounds when reinvested, there are no grounds for any apportionment. The whole constitutes capital, and must be retained and dealt with as such by the trustees.''

In *Leland* v. *Hayden,* 102 Mass., 542, it was held that a cash dividend went to the remainderman because its admitted source was the proceeds of sale of capital stock.

The $36,000 in question in this case came from the sum of $3,750,000, received by the Cleveland Stone Company from the Indiana Quarries Company and the Henry Struble Cut Stone Company, organizations whose names and purposes were in common with those of the Cleveland Stone Company itself, and it is our judgment that the source of this sum in question in the final analysis constituted proceeds from the sale of the capital stock.

We quote the following from *Heard* v. *Eldredge,* 109 Mass., pages 258 and 259, 12 Am. Rep., 687:

"Money paid to compensate a corporation, whose property consisted of a wharf and dock, for part of its real estate taken by right of eminent domain, if distributed as a dividend to the shareholders, belongs to the capital and not the income of a trust fund invested in the shares. * * *

"If the City had taken the whole of the company's land, it would be plain that they had taken its capital. A dividend of the money received for it would be a dividend of capital, of which the tenant for life ought to have the income only. The taking of a large part of the land makes no substantial difference in principle. It converts a part of the capital from real estate into personal."

There are numerous other phases which the able briefs of opposing counsel discuss, but this opinion has already attained sufficient length, and we think it is only necessary to conclude by saying that from an analysis of the source of the $36,000 in question, the resolutions of the directors and the stockholders of the Cleveland Stone Company, the intent of the testator as disclosed by the will, and many other

surrounding circumstances appearing in the record, the $36,000 is not income, but corpus.

Therefore, a decree may be entered accordingly in favor of the defendants, Charles Hickox, Martha Ann Hickox, Patricia Calhoun Hickox, minors, and George W. Nichols, guardian of such minors. In other words, we decree the same entry as was made in the court of common pleas, from which the appellant Alice C. Hickox appealed.

*Decree accordingly.*

VICKERY, P. J., and LEVINE, J., concur.